## NEW MAINE NATIONAL BANK, Plaintiff,

### and

## Federal Deposit Insurance Corporation, Counterclaim Defendant,

### v.

## Robert SEYDLER, Suzanne Seydler, Donald Seydler, Defendants and Counterclaim Plaintiffs.

### No. 91–0039–P.

United States District Court, D. Maine.

June 17, 1991.

William J. Kayatta, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for New Maine Nat. Bank.

James B. Bartlett, York, Me., for defendant Seydler.

MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF NEW MAINE NATIONAL BANK'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

Defendants'/Counterclaim Plaintiffs' (hereinafter Defendants) counterclaims against the Federal Deposit Insurance Corporation (hereinafter FDIC) have been dismissed pursuant to the directives on jurisdiction contained in 12 U.S.C. sections 1821(d)(3), (5), (6), and (13)(D). The original claim for foreclosure by New Maine National Bank (hereinafter NMNB) remains and is the subject of this summary judgment motion. The Court will grant NMNB's motion for summary judgment for the reasons discussed below.

## I. FACTS AND SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). It is not sufficient to show merely that there exists an alleged dispute about the facts. The nonmoving party must show that there is a *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The Court of Appeals for the First Circuit has elaborated on this standard:

[T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at

248 [106 S.Ct. at 2510]. It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. *Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989) (quoted in *MCI Telecommunications Corp. v. Franklin–Centennial Corp.*, 128 F.R.D. 158, 158–59 (D.Me.1989)).

The undisputed facts are as follows.[1] Defendants made application to Maine National Bank (hereinafter MNB) in the spring of 1987 for financing for the purchase of a business known as the Long Sands Store (hereinafter Store) and some unidentified real estate. Along with the application, Defendants submitted a business plan, an economic review, a financial statement, and the sellers' federal tax returns demonstrating the amount of income the Store would likely produce. Defendants represented to MNB that the Store would generate an annual gross income of approximately $200,000. MNB did not undertake an independent investigation of this estimate; nonetheless, MNB advised Defendants to borrow $490,000 for the acquisition of the Store. Even though Defendants sought a smaller loan and lower loan payments, they acquiesced in MNB's recommendation. On or about April 14, 1987, MNB issued a commitment letter to Defendants. Two weeks later, Defendants executed a mortgage and security agreement in favor of MNB and a closing statement.

Defendants submitted a proposal to MNB in March 1988 to extend the amount of available credit for the purpose of renovating the Store. The proposal included an additional $35,000 capital investment by Defendants. The product of this proposal was a promissory note in favor of MNB in the amount of $515,000 (hereinafter Note) which Defendants executed and delivered on July 11, 1988.[2] Defendants also executed on that day a mortgage and security agreement (hereinafter Mortgage) which conveyed to MNB real property located in York, Maine. MNB recorded the mortgage in the York County Registry of Deeds.

Defendants, apparently faced with some difficulties in meeting their loan obligations, submitted a Justification for Increased Debt Service and a new financial statement to MNB in September 1989. In October 1989, Defendants contacted Lorraine Boston, a MNB officer, to discuss the developing arrearage on the Note. Defendants submitted a profitability study and financial growth comparisons in response to a request from Ms. Boston. Ms. Boston directed Defendants not to make any additional payments until an arrangement had been reached. In November 1989, Archie Hayes assumed responsibility for Defendants' file at MNB, and advised Defendants that a work-out of the loan, including a schedule of payments to reduce the arrearage, would be possible if Defendant Robert Seydler were to obtain outside em-

---

**1.** Defendants, the nonmoving parties herein, have submitted a Statement of Material Facts, as required by Local Rule 19, supported by the affidavit of Robert Seydler. However, the statement and the affidavit do not contest the facts set forth in the Statement of Material Facts submitted by NMNB. Similarly, NMNB's Statement of Material Facts does not address many of the facts set forth in the statement submitted by Defendants. In the absence of any express indication in these statements of disagreement between the parties or the presence of manifestly conflicting evidence in the record, the Court concludes that no genuine dispute exists with respect to any of the facts set forth in the statements.

**2.** NMNB's Complaint apparently addresses only this 1988 loan. The 1987 loan is not a subject of this litigation.

ployment. Robert Seydler succeeded in obtaining a job at Bath Iron Works with an approximate annual salary of $60,000.

Mark Roller assumed responsibility for Defendants' file at MNB in January 1990. Defendants met with Mr. Roller on several occasions over the course of the next several months to address the arrearage on the loan. Defendants advised Mr. Roller that the Store's annual gross income for the preceding year had been approximately $520,000, far in excess of the amount projected in their original business plan and economic review. Defendants told Mr. Roller that some of that income and part of Robert Seydler's salary would be used both to pay off bills other than the loan obligation and to complete the renovations of the Store. Mr. Roller told Defendants that their plan was acceptable to MNB and that it would not prejudice Defendants' continued negotiations to work out the loan. Mr. Roller also advised Defendants not to make any additional payments until the workout was completed.

MNB informed each Defendant by letter on May 30, 1990 that it was accelerating the Note and demanded immediate and full payment thereon. Defendants are in default of the Note and have breached the Mortgage. NMNB, a "bridge bank" chartered pursuant to 12 U.S.C. section 1821(n), acquired the assets of MNB when that institution was placed in receivership by the FDIC on January 6, 1991.[3] Among the assets acquired by NMNB were the Note and Mortgage. NMNB is owed $494,-150.33 in principal on the Note, along with $80,386.54 accrued interest as of March 1, 1991, and interest accruing thereafter at the daily rate of $168.15. In addition, NMNB is entitled to full reimbursement of reasonable attorney's fees and all costs associated with the collection of this debt.

Defendants assert a number of defenses to NMNB's effort to collect the outstanding obligation, including waiver, "unclean hands," estoppel, negligence, breach of good faith and fair dealing, and fraud and misrepresentation.[4] The arguments supporting these defenses can be summarized in two statements: (1) NMNB, as the successor to MNB, breached its fiduciary duty and failed to exercise due care by issuing a loan to Defendants based upon a clearly erroneous evaluation of the income to be generated by the Store, while NMNB knew that the Store would be the sole source of funds for repaying the Note; and (2) NMNB made material misrepresentations and breached promises upon which Defendants reasonably relied with respect to the repayment of the loan obligation. NMNB responds that Defendants are estopped by the common law *D'Oench* doctrine and 12 U.S.C. section 1821(n)(4) from asserting these defenses.

## II. DISCUSSION

Defendants do not dispute that, except for the defenses described above, there is no genuine issue of material fact as to their joint and several liability for the full value of the Note, along with all interest and reasonable attorneys' fees. The only question is whether the defenses are effective against NMNB's claims. This Court recently held that a borrower defending against an effort by a bridge bank to collect on a note is estopped from asserting all defenses to the bridge bank's claims which rely for their success on oral agreements or representations. *Bateman v. FDIC*, 766 F.Supp. 1194 (D.Me.1991) (Carter, C.J.) (discussing *D'Oench, Duhme & Co. v. FDIC*,

---

3. MNB was declared insolvent on January 6, 1991. The FDIC was appointed receiver of MNB on that day pursuant to 12 U.S.C. sections 191 and 1821(c). The FDIC assumed MNB's liabilities, including the counterclaims which were recently dismissed pending exhaustion of congressionally mandated administrative procedures. *See* 12 U.S.C. § 1821(d)(6), (7), (8).

4. Defendants also assert failure to state a claim upon which relief may be granted, laches, failure to abide by contractual notice requirements, and lack of consideration as defenses. However, Defendants have not offered any argument or evidence in support of these defenses. Accordingly, the Court considers these defenses to have been waived. *See Carey v. Maine School Administrative District #17*, 754 F.Supp. 906, 924 (D.Me.1990) (Carter, C.J.).

315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. §§ 1823(e), 1821(n)(4)(I)).

■ The Supreme Court, interpreting a statutory provision which incorporated and clarified the common law *D'Oench* doctrine, has held that defendants are estopped from asserting even those defenses founded on fraudulent misrepresentations by failed banks. *Langley v. FDIC*, 484 U.S. 86, 93–95, 108 S.Ct. 396, 402–403, 98 L.Ed.2d 340 (1987) (interpreting 12 U.S.C. § 1823(e)).[5] *Langley* involved a fraudulent misrepresentation claim similar to the present defenses which was pending when the FDIC took over a failed bank. *Id.* at 88–90, 108 S.Ct. at 399–400. The Supreme Court went on to hold that the FDIC's knowledge of the misrepresentation before being appointed receiver for a failed bank was irrelevant to the applicability of this estoppel doctrine. *Id.* at 93–94, 108 S.Ct. at 402–03. *See also Timberland Design, Inc. v. First Service Bank for Savings*, 932 F.2d 46, 50–51 (1st Cir.1991). In sum, Defendants are estopped from advancing NMNB's misrepresentations and promises as defenses against the collection of the outstanding debt obligations.

■ The Supreme Court's consistently expansive definition of the "agreements" which may not be enforced against bridge banks to defeat collection on notes includes NMNB's alleged breach of fiduciary duty and the exercise of ordinary care. The common law *D'Oench* doctrine prohibits defendants from using any "secret agreements" to defend against efforts by the FDIC and bridge banks to collect on facially unqualified notes they have acquired from a failed bank. *D'Oench*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Kilpatrick v. Riddle*, 907 F.2d 1523, 1528 (5th Cir.1990) (including bridge banks within the common law *D'Oench* doctrine), *cert. denied,* —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991). The *Langley* Court, building on its earlier work in *D'Oench* to interpret 12 U.S.C. section 1823(e), made clear that *any unwritten and unrecorded*

*condition* upon the repayment of a note is a "scheme or arrangement that is likely to mislead banking authorities" and, therefore, is unavailable as a defense to a facially unqualified note. *Langley*, 484 U.S. at 93, 108 S.Ct. at 402. Defendants' arguments herein are nothing more than assertions that NMNB's fiduciary duty and duty to exercise due care are preconditions to the repayment of the Note. The common law *D'Oench* doctrine and section 1821(n)(4)(I), as interpreted by the *Langley* Court, estop Defendants from interposing those assertions as defenses in this case.

■ Defendants finally argue that the various documents which they submitted to MNB during the application process and the loan work-out process are sufficient to meet the statutory requirements for an agreement which is enforceable against a bridge bank. Section 1821(n)(4)(I) contains four requirements: (1) a writing; (2) the execution of the writing, contemporaneously with the bank's acquisition of the note, by both the failed bank and the party claiming an interest pursuant to the writing; (3) approval of the agreement by the failed bank's board of directors or loan committee evidenced in the minutes of a meeting of the board or committee; and (4) continuous maintenance of the meeting minutes reflecting the approval of the agreement as a business record of the failed bank. 12 U.S.C. § 1821(n)(4)(I). Defendants do not argue and have not submitted any evidence indicating either that the agreements entered into by MNB are memorialized in an executed writing or that MNB's board of directors or loan committee approved of the agreements. As a result, the documents submitted to MNB by Defendants are insufficient to satisfy the requirements of section 1821(n)(4)(I).

Accordingly, the Court hereby GRANTS the motion for summary judgment of Plaintiff New Maine National Bank. Plaintiff's counsel shall propose an order entering fi-

---

**5.** *Langley* involved the interpretation of section 1823(e) which, by its terms, applied only to the FDIC. However, the language of sections 1823(e) and 1821(n)(4)(I) are virtually identical. Any governing interpretation of the former undoubtedly governs construction of the latter.

nal judgment in accordance with the foregoing order on or before June 24, 1991.

SO ORDERED.