**NEW MAINE NATIONAL BANK, Plaintiff,**

v.

**Alan L. BENNER and Julie C. Benner, Defendants.**

**Civ. No. 91–0042–B–C.**

United States District Court, D. Maine.

Sept. 13, 1991.

James B. Barns, Portland, Me., for plaintiff.

William H. Welte, Rockport, Me., for defendants.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

Plaintiff New Maine National Bank moves for summary judgment on both counts of its Complaint for judgment on two promissory notes against Defendants Alan L. and Julie C. Benner.[1] The Court will grant NMNB's motion for summary judgment for the reasons discussed below.

### I. Facts and Summary Judgment Standard

A motion for summary judgment must be granted if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). It is not sufficient to show merely that there exists an alleged dispute about the facts. The nonmoving party must show that there is a *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The Court of Appeals for the First Circuit has elaborated on this standard:

[T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179,

---

1. Certain third-party claims asserted by Defendants as Third–Party Plaintiffs against the Third–Party Defendant Federal Deposit Insurance Corporation have been dismissed pursuant to the directives on jurisdiction contained in 12 U.S.C. sections 1821(d)(3), (5), (6), and 13(D). The original claims for judgment on the two promissory notes by New Maine National Bank (hereinafter NMNB) remain and are the subject of the pending summary judgment motion.

181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249–59, 106 S.Ct. at 2510–16.

*Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989) (quoted in *MCI Telecommunications Corp. v. Franklin–Centennial Corp.*, 128 F.R.D. 158, 158–59 (D.Me. 1989)).

The undisputed facts are as follows. Plaintiff is a "bridge bank" established by the Federal Deposit Insurance Corporation (hereinafter FDIC) on January 6, 1991, pursuant to 12 U.S.C. section 1821(n), for the purpose of acquiring various assets, including the loans which are the subject of this litigation, owned by the failed Maine National Bank (hereinafter MNB).[2] FDIC is the receiver for MNB and has assumed MNB's liabilities including Defendants' counterclaims in this case.

On Count I of the Complaint, it is established, without dispute, that Defendants executed and delivered to MNB a term promissory note dated January 6, 1989 in the amount of $75,000. Defendants have defaulted on the note and now owe Plaintiff on the note the principal amount of $74,132.94 plus $16,688.01 in interest through March 4, 1991, with a *per diem* accrual of interest at $26.25. On Count II of the Complaint, it is established, without contest, that Defendants executed and delivered to MNB a term promissory note dated August 28, 1989 in the principal amount of $2,000 on which the full amount of the principal is owed along with interest totaling $407.63 as of March 4, 1991, with a continuing *per diem* interest accrual at a rate of $.68. Both notes provide in addition for the recovery of costs of court and attorneys' fees in the event of default.

Plaintiff has submitted materials of evidentiary quality which establish that Defendants failed to make the contractually required payments set forth in each of the notes, thereby breaching the terms of the notes and defaulting on their obligations thereunder. These factual propositions are nowhere disputed in the record. Plaintiff has made demands for all amounts due under each instrument, but Defendants have not satisfied these demands. The defaults remain outstanding on each of the two notes. These facts, likewise, are undisputed. The Court finds that this evidence is sufficient to establish, as a matter of law, that Defendants have breached each of the promissory notes, thereby entitling Plaintiff to judgment in accordance with the terms of each note in the absence of some legal defense thereto.

Defendants have asserted a number of defenses to Plaintiff's claims on the two promissory notes by their Amended Answer, Affirmative Defenses and Counterclaim to the Complaint (Docket No. 1(h)), filed in the state court before removal to this Court. These are (1) failure to state a claim upon which relief can be granted, (2) breach of Plaintiff's duty of good faith and fair dealing with Defendants, (3) lack of consideration, (4) bar by accord and satisfaction, and (5) bar under the doctrine of equitable estoppel. *Id.* at unnumbered page 2.

Defendants, in response to the pending motion, have provided no factual material sufficient to generate any issue of fact with respect to the viability of the affirmative defenses of failure to state a claim upon which relief can be granted, lack of consideration, or bar by an accord and satisfaction. Since Defendants bear the burden of proof on affirmative defenses, it is incumbent upon them, under the standard applicable in the determination of motions

**2.** In other recent cases, the Court has been advised on the record that effective July 13, 1991, the FDIC was appointed receiver of NMNB by the Comptroller of the Currency. *FDIC v. Ralph H. Doering*, Civ. No. 91–0045–P–C (D.Me. Sept. 11, 1991) at 1, n. 1. There, plaintiff moved to substitute FDIC for NMNB. No such advice or motion has been placed of record in this case. The Court treats NMNB on this record as the real party plaintiff.

for summary judgment, to produce materials of evidentiary quality sufficient to show that the effectiveness of the pleaded affirmative defense depends upon the resolution of some genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Hence, those affirmative defenses are not sufficiently supported upon the record to prevent the entry of summary judgment on Plaintiff's principal claims.

On the remaining defenses of alleged breach of Plaintiff's duty of good faith and fair dealing and the doctrine of equitable estoppel, Defendants have submitted only a "Concise Statement of Material Fact at [*sic*] to Which There Exists a Genuine Issue to be Tried" (Docket No. 22). The genuine issue of material fact is stated to be:

> In or about February of 1990 when the situation regarding the engine failure of the F/V LYDIA MARIE II made it impossible for defendants to pay the two payments per month agreed to in Exhibit B to the Affidavit of Paul Reynolds, John Stokinger at the bank's Rockland Branch told defendant Alan Benner that the bank would give defendants new financing consisting of a portfolio loan combining the home and the vessel as collateral. He said "We will do a portfolio loan for you" or words to that affect [*sic*]. He followed this up with a letter urging defendants to go with the portfolio loan. He had previously discussed this as an option in lieu of making two payments a month. In February when defendants could not make the double payments any longer he offered the portfolio loan and when defendant accepted he claimed the bank could no longer do what it promised. Defendant's [*sic*] accepted the bank's proposal to do a portfolio loan before being told the bank wouldn't do it. See Affidavit of Alan Benner.

Concise Statement of Material Fact, etc. (Docket No. 22) at 1–2. This statement of a genuine issue was supported only by the Affidavit of Defendant Alan L. Benner, filed herein on April 11, 1991 and attached to Defendant's Memorandum of Law in Support of their Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 11M). The only pertinent recitals to the defense in that Affidavit are contained in paragraph (2) thereof, which reads as follows:

> In or about February of 1990 when the situation regarding the engine failure of the F/V LYDIA MARIE II made it impossible for me to pay the two payments per month agreed to in Exhibit B to the Affidavit of Paul Reynolds, John Stokinger at the bank's Rockland Branch told me that the bank would give me new financing consisting of a portfolio loan combining my home and the vessel as collateral. He said "We will do a portfolio loan for you" or words to that affect [*sic*]. He followed this up with a letter urging me to go with the portfolio loan. He had previously discussed this as an option in lieu of making two payments a month. In February when I could not make the double payments any longer he offered the portfolio loan and when I accepted he claimed the bank could no longer do what it promised. I accepted the banks proposal to do a portfolio loan before he told me the bank wouldn't do it.

Affidavit of Alan L. Benner, dated April 8, 1991, at 1.

■ This Court has recently had occasion to address the viability, under the *D'Oench, Duhme* doctrine in respect to federal equitable estoppel, of defenses to claims made by the FDIC as receiver, in its corporate capacity, or by a bridge bank where those defenses are based upon factual assertions of the existence of agreements or undertakings of an oral nature between the failed bank and debtors. The Court has recently held that a borrower defending against an effort by a bridge bank to collect on a note is estopped from asserting all defenses to the bridge bank's claims which rely for their success upon oral agreements or representations. *Bateman v. FDIC*, 766 F.Supp. 1194 (D.Me.1991 (Carter, C.J.)); *New Maine National Bank and Federal Deposit Insurance Corporation v. Seydler*, 765 F.Supp. 770 (D.Me. 1991 (Carter, C.J.) (both discussing

*D'Oench, Duhme and Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. §§ 1823(e), 1821(n)(4)(I)).

As the Court has previously noted, the Supreme Court, interpreting a statutory provision which incorporated and clarified the common law *D'Oench* doctrine, has held that defendants are estopped from asserting even those defenses founded on fraudulent misrepresentation by failed banks. *Langley v. FDIC,* 484 U.S. 86, 93–95, 108 S.Ct. 396, 402–03, 98 L.Ed.2d 340 (1987) (interpreting 12 U.S.C. § 1823(e)).[3] *Langley* involved a fraudulent misrepresentation claim similar to the present defenses, which was pending when the FDIC took over the failed bank. *Id.* at 88–90, 108 S.Ct. at 399–400. The Supreme Court went on to hold that the FDIC's knowledge of the misrepresentation before being appointed receiver for a failed bank was irrelevant to the applicability of this estoppel doctrine. *Id.* at 93–94, 108 S.Ct. at 402–03. *See also Timberland Design, Inc. v. First Service Bank for Savings,* 932 F.2d 46 at ——, —— (1st Cir.1991). In sum, Defendants are estopped from advancing MNB's misrepresentations and promises as defenses against the collection of the outstanding debt obligations represented by the two promissory notes.

The Supreme Court's consistently expansive definition of the "agreements" which may not be enforced against bridge banks to defeat collection on notes includes MNB's alleged breach of fiduciary duty. The common law *D'Oench* doctrine prohibits Defendants from using *any* "secret agreements" to defend against efforts by the FDIC and bridge banks to collect on facially unqualified notes they have acquired from a failed bank. *D'Oench,* 315 U.S. 447, 62 S.Ct. 676 (1942); *Kilpatrick v. Riddle,* 907 F.2d 1523, 1528 (5th Cir.1990) (including bridge banks within the common law *D'Oench* doctrine), *cert. denied,* —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991). The *Langley* Court, building on its earlier work in *D'Oench* to interpret 12 U.S.C. § 1823(e), made clear that *any unwritten and unrecorded condition* upon the repayment of a note is a "scheme or arrangement that is likely to mislead banking authorities" and, therefore, is unavailable as a defense to a facially unqualified note. *Langley,* 484 U.S. at 93, 108 S.Ct. at 402.

Defendants' arguments based on the remaining two affirmative defenses herein are nothing more than assertions that MNB's performance of its fiduciary duty as allegedly promised, and the content of the alleged secret agreements themselves, are preconditions to the repayment of the notes in question. The common law *D'Oench* doctrine and section 1821(n)(4)(I), as interpreted by the *Langley* Court, estops Defendants from successfully interposing those assertions as defenses in this case. It is clear that the asserted agreement or undertaking to refinance Defendants' debt obligations in the event that it became impossible for Defendant Alan L. Benner to pay the two "catch-up" payments per month are barred under the *D'Oench* doctrine from any effect which would defeat the facially unqualified promissory notes upon which Plaintiff brings suit herein.

Accordingly, the Court hereby GRANTS the Motion for Summary Judgment of Plaintiff New Maine National Bank on each of Counts I and II of the Complaint herein against both Defendants. Plaintiff's counsel shall propose, on or before September 25, 1991, an order entering final judgment in accordance with the foregoing order for the amount of principal, interest, and attorneys' fees due on the notes. Counsel shall immediately confer and agree upon reasonable attorneys' fees. If they are unable to agree, the parties shall file, on or before September 25, 1991, submissions on the issues so generated, and the Court will resolve those issues.

So ORDERED.

---

**3.** *Langley* involved the interpretation of section 1823(e) which, by its terms, applied only to the FDIC. However, the language of sections 1823(e) and 1821(n)(4)(I) are virtually identical. Any governing interpretation of the former undoubtedly governs construction of the latter.