### NEW MAINE NATIONAL BANK, Plaintiff,

v.

### Michael A. LIBERTY, David R. Cope, Richard T. Cook, David H. Cook, and Liberty Group, Inc., Defendants,

and

### Allied Construction Co., Inc., Party-in-Interest.

Civ. No. 91–0042–P.

United States District Court, D. Maine.

Oct. 24, 1991.

---

Thomas A. Cox, Rufus E. Brown, Portland, Me., for New Maine Nat. Bank.

Leslie E. Lowry, III, Portland, Me., for Michael A. Liberty, Liberty Group, Inc. and David R. Cope.

Richard L. O'Meara, Portland, Me., for Richard T. Cook and David H. Cook.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF NEW MAINE NATIONAL BANK

GENE CARTER, Chief Judge.

This case, which was originally before the Superior Court of the State of Maine for the Judicial District of Cumberland County, was removed to this Court under 12 United States Code section 1819(a) and (b)(2)(B). This removal arose from the Federal Deposit Insurance Corporation's (hereinafter "FDIC") appointment as Receiver of Maine National Bank (hereinafter "MNB") upon the bank's declaration of insolvency on January 6, 1991.[1]

1. The FDIC was appointed Receiver of MNB on that date pursuant to 12 United States Code sections 191 and 1821(c). The FDIC assumed MNB's liabilities. Thereafter, New Maine National Bank (hereinafter "NMNB"), the Plaintiff herein, was created to perform the function of a "bridge bank" under the statutory format. That

The case involves the claims of Plaintiff New Maine National Bank for foreclosure of a mortgage and collection on a promissory note (hereinafter "Note") in favor of Plaintiff signed on October 23, 1987 in the original principal amount of Two Million Three Hundred Thousand Dollars ($2,300,000) by Ten Forty–One Brighton Avenue Associates (hereinafter "the Partnership"). The Partnership executed and delivered to Plaintiff on October 23, 1987, a Mortgage and Security Agreement (hereinafter "Mortgage") securing the $2,300,000 Note. On the same date, Defendants Richard T. Cook, David H. Cook, David R. Cope and Michael A. Liberty each signed a guaranty agreement guaranteeing the obligations of the Partnership pursuant to the Note. Complaint ¶ 4. Plaintiff alleges that it "exercised its option to declare the note to be in default and to accelerate and demand all sums due and payable in full by virtue of separate defaults in payment or performance of obligations due to Plaintiff ... by each of the Guarantor Defendants ..." Complaint ¶ 6.[2]

Plaintiff's basis for exercising such option arises from a "cross-default" provision in the Note, which provides that the Note shall:

immediately become due and payable ... without notice or demand, upon or anytime after ... (b) default in the payment or performance of any Obligation, or any liability or obligation to Bank of any indorser, guarantor or surety of or for any of the Obligations, which is not cured within the applicable grace period ... or

(d) default under any instrument granting security or constituting collateral herefor, which is not cured within any applicable grace period...."

Affidavit of Mark A. Anderson in Support of Motion for Appointment of Receiver (hereinafter "Anderson Affidavit"), Exhibit A at 4.

Plaintiff alleges that the Partnership "has breached a condition of the Mortgage by virtue of the default under the terms and conditions of the Note." Complaint ¶ 11.

The Court now has before it the Motion for Summary Judgment filed on March 27, 1991 by Plaintiff New Maine National Bank. The Court acts on the motion on the basis of the written submissions of the parties.

Under the Complaint, Defendants are the parties against whom recovery is sought on the theory of breach of condition of the Mortgage in Count I and, in Count II, on the basis that "default under the Note or Mortgage and Security Agreement described is an event of default under each of the unconditional and absolute Guaranties." Complaint ¶ 16. Plaintiff alleges that, pursuant to the terms of the Guaranties, Defendants "are each personally liable, jointly and severally, for the full amount of that indebtedness." Complaint ¶ 17.

In support of its Motion for Summary Judgment now pending, Plaintiff has filed a Statement of Material Facts as to Which There is no Genuine Issue to be Tried,

---

bank dealt with assets and liabilities of the original bank in the carrying out of the receivership.

In other recent cases, the Court has been advised on the record that effective July 13, 1991, the FDIC was appointed Receiver of NMNB by the Controller of the Currency. *FDIC v. Doering,* Civ. No. 91–0045–P–C (D.Me. Sept. 11, 1991), at 1 n. 1; *see also New Maine National Bank v. Benner,* 774 F.Supp. 36, 38 n. 2 (D.Me. 1991). In *Doering,* the plaintiff moved to substitute the FDIC for NMNB. In *Benner,* a motion was made for substitution of the FDIC for the nominal plaintiff after the Court had called the situation to the attention of counsel in the case by its aforesaid footnote. No such advice or motion has been placed of record in this case. The Court treats NMNB on this record as the real party plaintiff.

**2.** The Complaint further alleges that "[d]espite such demand, payment in full has not been made." ¶ 7. Additionally, it states:

While some partial payments have been made, the entire sum due after acceleration has not been paid and each partial payment has been accompanied by a letter from Ten Forty–One Brighton Avenue Associates to Plaintiff agreeing that acceptance by Plaintiff of partial payments did not act as a waiver of any of Plaintiff's rights in any way or as a waiver of the declaration of default and acceleration that was previously declared by Plaintiff.

¶ 8.

dated March 27, 1991 (hereinafter "Statement").

## I. *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be entered.
> *Anderson,* 477 U.S. at 249–59, 106 S.Ct. at 2510–16.

*Brennan v. Hendrigan,* 888 F.2d 189, 191–92 (1st Cir.1989).

The Court now looks to the supporting papers on the motion and the citations to materials of evidentiary quality in support of the issues which the Court must consider as a basis for its action upon the motion.

## II. *Count I*

In its Complaint, Plaintiff states that a cross-default provision in the Note provides that the Note shall "immediately become due and payable without notice of demand, upon or any time after ... (b) default in the payment or performance of any Obligation, or any liability or any obligation to Bank of any indorser, guarantor or surety of or for any of the Obligations, which is not cured within any applicable grace period...." Complaint ¶ 3. Plaintiff alleges that this provision is an unambiguous cross-default clause and "plainly means that *any* default in the payment or performance of *any* liability or obligation of *any* guarantor owed to the Plaintiff which is not cured within the applicable grace period constitutes a default of the Note." Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and for Entry of Final Judgment at 18 (hereinafter "Memorandum of Law").[3]

Defendants first argue that the Note does not contain a cross-default provision and, alternatively, that even if such a provision exists, the provision is ambiguous. Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment at 3 (hereinafter "Defendants' Memorandum of Law"); Memorandum of Law of Defendants Richard Cook and

---

3. In support of its allegation, Plaintiff states that "[o]bligor" is a defined term meaning "any person primarily liable hereunder [the note] or in respect hereto;". "Obligation" is a defined term meaning "any obligation hereunder of any Obligor to the holder whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising;". *Id.*

David Cook in Opposition to Plaintiff's Motion for Summary Judgment at 3 (hereinafter "Cooks' Memorandum of Law"). Defendants also argue that, even if there is an existing cross-default provision that is unambiguous, a genuine issue of material fact exists as to whether any default on the part of the Guarantors even occurred. Defendants' Memorandum of Law at 5–12; Cooks' Memorandum of Law at 5. Lastly, Defendants argue that even if they defaulted on the Note, a genuine issue of material fact exists as to whether Plaintiff is entitled to accelerate the debt and foreclose. Defendants' Memorandum of Law at 2.

The Court finds that the Note contains a cross-default provision. The language of the Note's provision that default of "any Obligation" of "any ... guarantor" clearly represents a cross-default provision.[4]

With respect to Defendants' argument that the language of the provision is ambiguous,[5] "the issue of whether contract language is ambiguous is a question of law for the Court." *Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383, 1387 (Me.1983). Under Maine law, "[t]he interpretation of an unambiguous written contract is a question of law for the Court ... The interpretation of an unambiguous writing must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." *Id.* (citations omitted).

Contrary to Defendants' assertion, the Court does not find that the cross-default provision is " 'reasonably susceptible of different interpretations.' " Cooks' Memorandum of Law at 3 (citing *Lidstone v. Green*, 469 A.2d 843, 846 (Me.1983)). The language in the Note clearly provides that it shall "immediately become due and payable ... upon or anytime after ... default in the payment ... of *any* ... obligation to Bank of *any* ... guarantor ... for any of the Obligations...." Anderson Affidavit, Exhibit A at 4 (emphasis added). The plain meaning of this language is unmistakable. The provision clearly applies to any obligation to Plaintiff of the Defendant Guarantors of the Note, including Defendants' promissory notes. It is not "reasonably susceptible of different interpretations." Thus, the Court concludes that no genuine issue of material fact exists as to whether the Note contains a cross-default provision and the Court further concludes as a matter of law that the provision is not ambiguous.

Plaintiff alleges that each of the four Defendant Guarantors was in default of his

---

**4.** Plaintiff adequately explains the basis for the origin of this provision as a cross-default clause:

> The Promissory Note which Maine National Bank used to evidence the loan to Ten Forty-One Brighton Avenue Associates provided specifically that a default by any of the individual Guarantors on any obligation owed to Maine National Bank would give rise to the right of Maine National Bank to declare the Ten Forty-One Brighton Avenue Associates' Note to be in default and to demand that the entire outstanding balance thereof be immediately paid in full. Maine National Bank required this provision because of its experience indicating that defaults by guarantors on other obligations are usually evidence of a substantial impairment of the financial positions of the guarantors and often lead to defaults in the underlying obligation. The purpose of the so-called cross default provision is to allow the Bank to move promptly to liquidate its collateral and collect any deficiency from the guarantors before the value of the collateral becomes seriously impaired and before the Guarantors' financial decline reaches a point where they have insufficient assets to pay their guarantee obligation.

Affidavit of Michael A. Morel at 4, ¶ 9.

**5.** Defendants note that the provision does not mirror the language of cross-default provisions in other guarantees drafted by Plaintiff:

> [T]he Bank has used other more precise language in cases where it was specifically agreed that cross-defaults would be permitted. For example, the Hamblet Development Corporation commercial note contains a plain cross-default provision, which provides for default and acceleration upon: "(b) The failure by the Borrower to punctually perform or discharge any other liability or obligation of the Borrower to the Bank under this Note, the related Mortgage and Security Agreement, the related Construction Loan Agreement, *or any other agreement with the Bank;* ... Obviously, the Bank knew how to memorialize a clear and unambiguous cross-default provision when it wished to do so.

Cooks' Memorandum of Law at 4–5 (emphasis original).

The Court finds this argument unconvincing in that no requirement exists that all cross-default provisions must adhere to identical language.

obligations to Plaintiff. Defendants argue that Plaintiff should not have triggered the cross-default provision because of an absence of default by Defendants. Defendants' Memorandum of Law at 6–11; Cooks' Memorandum of Law at 5–6. The Court finds that no genuine issue of material fact exists regarding default on each note for the reasons that follow.

■ With respect to the Eighteen Thousand Seven Hundred Fifty Dollar ($18,750) Promissory Note of Defendants Michael A. Liberty and David R. Cope, dated August 7, 1989, Plaintiff alleges that the note "was in default by virtue of [Defendants'] failure to make the first three payments when due." Affidavit of Mark A. Anderson in Support of Plaintiff's Motion for Summary Judgment (hereinafter "Anderson Affidavit II") at 4, ¶ 9. Plaintiff also alleges that: Liberty and Cope failed to make the installment payment due on December 7, 1989. Therefore, as of December 8, 1989 the Note was in default and the Defendants had a 15–day grace period to cure that default. That grace period is specifically provided for within the $18,750 Note itself. However, despite the fifteen day grace period, the Defendant did not cure the payment default. At the time of the March 8, 1990 letter, the Note was three months overdue. In addition, Liberty and Cope waived presentment, demand, notice and protest. *See* $18,750 Note, Page 4. Clearly the March 8, 1990 letter did not create an additional grace period. Simply stating that Maine National Bank would immediately bring suit if payment in full was not immediately made did not create a grace period beyond that provided for in the $18,750 Note.

Reply Memorandum in Support of Summary Judgment at 7–8 (hereinafter "Reply Memorandum").[6]

Defendants concede that this Note was not paid by Defendants Cope and Liberty until April 6, 1990. Affidavit of Kevin McCarthy at 2, ¶ 4. This payment date was well beyond the applicable grace period of fifteen days. Hence, Defendants Liberty and Cope were in default of payments on the $18,750 promissory note. No genuine issue of material fact exists on the matter of this default.

■ With respect to the One Hundred Twenty–Five Thousand Dollar ($125,000) promissory note executed by Defendants Michael A. Liberty and David R. Cope, dated June 30, 1986, Plaintiff states that Defendants failed to make the monthly interest payments that were due for the months of January, February and March.[7] Reply Memorandum at 8. Moreover, Defendants failed to pay the $125,000 Note in full. *Id.* at 9; *see also* Statement at 3, ¶ 8. As noted by Defendants, "Liberty Group paid the amounts it understood to be due based on the March 8, 1990 letter ... By check dated April 6, 1990, Liberty Group paid the past-due amounts on that Note, although we did not pay the full principal balance of the Note since we had not receive [sic] any prior notice that there was a default." Affidavit of Kevin McCarthy

---

**6.** The promissory note in question specifically states that the first payment was due on December 7, 1989. *See* Anderson Affidavit, Exhibit J at 1. The note also states under "Default; Acceleration" that:

In case of default in the payment of any installment of interest or of principal and interest due hereon, including any late charge, and such default is continued more than fifteen (15) days after the due date thereof; or if maker or any party liable herefor: defaults (not cured within any applicable grace period) in the terms, obligations, covenants, agreements or conditions of any mortgage, security agreement, construction loan agreement, guaranty or any other document that is now or may from time to time hereafter be given as security herefor or in connec-

tion herewith ... then ... the holder of this Promissory Note shall have the option ... to declare due and payable at once the entire principal balance hereof together with accrued interest and prepayment premiums, if any....
*Id.* at 3.

**7.** Plaintiff does not indicate a specific year in its Reply Memorandum, which simply reads: "... when the March 8, 1990 letter was written, Defendants Liberty and Cope had failed to make the payments that were due for the months of January, February and March." Reply Memorandum at 8. Presumably, Plaintiff was referring to 1990 as the year of the delinquent payments.

(hereinafter "McCarthy Affidavit") at 2–3, ¶¶ 6–7.[8]

The Court concurs with Plaintiff's assessment that "the Note also provides that a default by *any* obligor (of the $125,000 Note) of *any* other obligation owed to New Maine National Bank is a default of that Note. As has already been established, the $18,750 Note was clearly in default at that time by virtue of Defendants' failure to make payments as required by the Note." Reply Memorandum at 8. Given that Defendants were delinquent in paying both the principal of the Note and monthly interest payments and, moreover, that they were in default of another note, the Court concludes that no genuine issue of material fact exists as to whether Defendants were in default of the $125,000 promissory note.

■■■ With respect to Defendants Richard T. Cook and David H. Cook's guaranty of the Hamblet Development Corporation through a commercial note, dated April 27, 1988, in the amount of Three Million One Hundred Thousand Dollars ($3,100,000), Plaintiff alleges that at the time of its March 29, 1990 demand letter, the Note was overdue by 153 days and in arrears by over One Hundred Thirty–Five Thousand Dollars ($135,000), well beyond the 15–day grace period. Reply Memorandum at 10. Defendants argue that Plaintiff did not is-

sue notice of default and acceleration to Hamblet Development Corporation until October 24, 1990. Cooks' Memorandum of Law at 5. David Cook and Richard Cook were notified, however, of their defaults in letters dated March 29, 1990.[9] See Anderson Affidavit, Exhibit I. As noted by Plaintiff, "[t]hat letter also refers to the fact that the Cooks acknowledged in a meeting on March 28, 1990 that the Hamblet Development Corporation was in default of its payment obligations under the $3,100,000 Note." Reply Memorandum at 9–10. The Court finds that no genuine issue of material fact exists as to whether Defendants were in default of the Hamblet construction loan.

■■■ Lastly, Plaintiff alleges that Defendant David R. Cope was in default of his promissory note, dated April 18, 1986, in the original ceiling amount of One Hundred Thousand Dollars ($100,000). Plaintiff's Memorandum of Law at 4. Defendant argues that, prior to Plaintiff's letter dated March 27, 1990, no notice had been made for payment in full of the $100,000 note. McCarthy Affidavit at 3, ¶ 9. Plaintiff notes, however, that this note was a demand note that was due immediately upon demand; there was no grace period. Reply Statement at 11; *see also* Anderson Affidavit II at 4–5, ¶ 12.[10] Further, Plain-

---

8. The $125,000 Promissory Note states that: Interest only shall be paid with interest ... in twenty three (23) successive monthly installments commencing on the 30th day of July 1986 and continuing on the same day of each and every consecutive month thereafter until and including the 30th day of May 1988 ... After which time the outstanding principal balance then remaining unpaid together with accrued interest at the "Referenced Rate" shall be paid in full on June 30, 1988. Anderson Affidavit, Exhibit L at 1.
The Note also provides that:
This note shall immediately become due and payable without notice or demand ... other than *notice of the undersigned right to cure a* default for failure to make a required payment, upon or any time after ... (b) default in the payment or performance of any Obligation, of any liability or obligation to Bank of any indorser, guarantor or surety of or for any of the Obligations, or of any covenant or liability contained or referred to herein or in any note, instrument, document or agreement evidencing or securing any Obligations....

*Id.* at 2.

9. Whether or not Defendants received notice of default and acceleration, however, the Hamblet note specifically states that "[t]he Bank at its option may declare the entire unpaid principal balance of this Note and accrued unpaid interest thereon to be immediately due and payable without notice or protest (both of which are hereby waived) upon the occurrence of ... The failure by the Borrower to pay within fifteen (15) days of when due any amount then owing by the Borrower...." Anderson Affidavit, Exhibit N at 2. Therefore, Plaintiff was not required to provide any notice. It did so, however, despite Defendants' contrary assertion that no notice was sent until October 24, 1990.

10. The $100,000 Promissory Note states that "[b]orrower promises to pay, ON DEMAND, all balances outstanding under this Note with interest as provided herein, to Bank, its successors or assigns, at its offices at Portland, Maine...." Anderson Affidavit, Exhibit Y, Paragraph 1.

tiff notes that the March 27, 1990 demand letter "clearly indicates that the Note is in default because the interest payments had not been made when due." Reply Statement at 11; *see also* Anderson Affidavit, Exhibit Z.

Defendants argue that a genuine issue of material fact exists as to whether the note was in default because, first, as of the date that Plaintiff accelerated the note, Defendant Cope was not in default on his line of credit. Defendants' Memorandum of Law at 10. Moreover, "[u]pon information and belief, the $100,000 Note is currently the subject of litigation pending in Cumberland County, Maine, Superior Court in an action captioned *New Maine National Bank v. David R. Cope*, Civil Action Docket No. CV–90–1495, which action was commenced on or about October 31, 1990." McCarthy Affidavit at 3, ¶ 10.

Given that Defendant David R. Cope was delinquent in paying both the principal balance of the note and monthly interest payments, the Court concludes that no genuine issue of material fact exists as to whether Defendant Cope was in default of the $100,000 note.[11]

█ Accordingly, the Court finds that no genuine issue of material fact exists as to the existence and triggering of the cross-default provision of the Note, based upon each Defendant's defaults as Guarantors.

[9] In light of the clear language in the Mortgage regarding acceleration and foreclosure,[12] the Court also finds that Defendants breached a condition of the Mortgage and that Plaintiff was entitled to accelerate the debt and foreclose.

█ The Court finds that no genuine issue of material fact exists as to whether Plaintiff is entitled to foreclosure as a matter of equity. Defendants argue that Plaintiff is not entitled to the equitable remedy of foreclosure, relying upon various so-called "technical" defaults raised by Plaintiff. Defendants' Memorandum of Law at 12–14. The Court, however, has based its finding of no genuine issue of material fact as a matter of law regarding default strictly upon the existence, triggering, and consequence of the Note's cross-default provision. It has not needed to address the "technical" defaults that form the basis of Defendants' equity argument. Accordingly, Defendants' argument fails to address whether default based on the Note's cross-default provision raises a genuine issue of material fact regarding foreclosure as an equitable remedy.

Moreover, Defendants cite cases in their argument that are not controlling precedent for this Court. *Id.* at 12. The absence of cases in this jurisdiction on the matter of foreclosure as an equitable remedy do not compel the Court to rely on a paucity of cases in other jurisdictions. The

---

11. The McCarthy Affidavit alleges that the $100,000 note is currently the subject of pending litigation, based "upon information and belief." ¶ 10. Pursuant to Federal Rule of Civil Procedure 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge ..." As noted by the First Circuit, an " 'affidavit ... made upon information and belief ... does not comply with Rule 56(e).' " *Sheinkopf v. Stone*, 927 F.2d 1259, 1271 (1st Cir.1991) (quoting *Automatic Radio Manufacturing, Inc. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1949)). Hence, the aforementioned allegation in the McCarthy Affidavit raises no genuine issue of material fact.

12. Paragraph T of the Agreement states:
The Grantee, its successors and assigns, for breach of any term, condition, covenant or agreement contained or referred to herein, shall have the right to accelerate any and all indebtedness secured hereby if not cured within any applicable grace period, the right

of foreclosure and any and all other rights and remedies given to a Mortgagee and Secured Party under this Mortgage and Security Agreement and any instrument it secures ... Anderson Affidavit, Exhibit B at 14.
The specific breach arises from Paragraph G of the Agreement which states:
If default be made in payment, when due, of any indebtedness secured hereby, or in performance of any of Grantor's obligations, covenants or agreements hereunder or incorporated by reference herein ... and such default is not remedied within thirty (30) days of mailing of written notice of such default as mailed by Grantee to Grantor, provided, however, no notice of default shall be required to be given to Grantor for default in any payment due under the Note which shall be in default if not received by Bank within fifteen (15) days after due date.
*Id.* at 8.

Court concludes that, under Maine law, Plaintiff's right of foreclosure follows as a matter of law upon Defendants' defaults in this case.[13]

## III. *Count II*

■ The Court has already found that Defendants, as Guarantors under the Note, were in default. Pursuant to the terms of the Guaranties,[14] Defendants Richard T. Cook, David H. Cook, David R. Cope and Michael A. Liberty are each personally liable, jointly and severally, for the full amount of that indebtedness.

With respect to the actual amount of damages under Defendants' liability, the Court finds that a genuine issue of material fact exists. Plaintiff states that, as of March 15, 1991, the Partnership was indebted to Plaintiff for the original principal amount of Two Million Two Hundred Seventy–Nine Thousand Two Hundred Thirty–Eight Dollars and Forty–Six Cents ($2,279,238.46) with interest through the date of March 15, 1991 in the amount of Seventy–Four Thousand Ninety–Two Dollars and Twenty–Seven Cents ($74,092.27) with interest after this date accruing at a daily rate which is currently Seven Hundred Thirty–Three Dollars and Seventy–Three Cents ($733.73). Statement at 5; *see also* Anderson Affidavit II at 7, ¶ 19.

Defendants argue that a genuine issue of material fact exists as to whether as of March 15, 1991, the Partnership was indebted to Plaintiff for the aforementioned principal amount with interest. Statement of Material Facts as to Which There Exists a Genuine Issue at 7, ¶ 7. As support, Defendants cite the McCarthy Affidavit, which notes that in a letter dated March 19, 1990, MNB represented that there was only Sixteen Thousand Four Hundred Fifty–One Dollars and Ninety–One Cents ($16,451.91) left to be disbursed under the loan. ¶ 11; *see also* Defendants' Memorandum in Opposition to Plaintiff's Motion for Appointment of Receiver, Exhibit C. The Affidavit notes that "we disputed with Plaintiff at the time of the March 19, 1990 letter the accounting undertaken to reach the bank's conclusion as to the remaining available funds for tenant fit-up." McCarthy Affidavit at 4, ¶ 11. The Affidavit concludes that "[i]t is impossible for us to verify the amounts due and owing as claimed in Plaintiff's proposed judgment without a full and fair accounting of rents received and expenses paid by the Receiver." *Id.* at 5, ¶ 16.

---

**13.** With respect to the acceleration clause of the Mortgage:

> It is generally accepted that a court of equity has the power to relieve a mortgagor from the effect of an operative acceleration clause in a mortgage where the default of the mortgagor was the result of some unconscionable or inequitable conduct of the mortgagee. Some courts go further and relieve a mortgagor from the effect of the acceleration clause where the default was caused by an accident, or a mistake of the mortgagor, who was acting in good faith, or unusual circumstances beyond his control, or simply where the court is confronted with genuinely equitable grounds for such relief.
> In other cases, the position is taken that unless the mortgagor's default can be traced to some inequitable design or action of the mortgagee, equity will not relieve the mortgagor from the effect of an operative acceleration clause.
> 55 Am.Jur.2d *Mortgages* § 375 (1971).

The Court finds that none of the aforementioned conditions is evident in the record to raise any genuine issue of material fact as to whether Defendants should be relieved from the effect of the Mortgage's operative acceleration clause.

**14.** Each of the Guaranty Agreements states:

> In the event of a default in payment of principal of the Note when and as the same shall become due, whether at the stated maturity thereof or by acceleration or otherwise, or in the event of a default in the payment of any interest on the Note when and as the same shall become due, and if such default is not cured within any applicable grace period, the Bank shall have the right to proceed first and directly against the Guarantor under this Agreement without proceeding against or exhausting any other remedies which it may have against Borrower or any other guarantor and without resorting to any other security held by the Bank which is pledged by the Borrower.
> Anderson Affidavit, Exhibits E–H, Guaranty Agreement, Section 2.4, at 4–5.
> Pursuant to the Agreement, "Events of Default" includes: "The occurrence of any event of default under the, Note, the Mortgage and Security Agreement or any document securing the same which is not cured within any applicable grace period...." *Id.*, Section 3.1, at 5.

Plaintiff has implicitly stated that Twenty Thousand Seven Hundred Sixty–One Dollars and Fifty–Four Cents ($20,761.54) remained to be disbursed under the loan in light of the alleged principal amount due of $2,279,238.46. Statement at 5, ¶ 19. In light of the letter dated March 19, 1990 in the record, which states that Sixteen Thousand Four Hundred Fifty–One Dollars and Ninety–One Cents ($16,451.91) was remaining to be disbursed, the Court finds that a genuine issue of material fact exists on damages as to the remaining available funds for tenant fit-up as of March 19, 1990 and hence, the exact indebtedness of Defendants owed to Plaintiff under the terms of the Note and Mortgage. This is the only genuine issue of material fact in this case.

■ Pursuant to 14 M.R.S.A. section 6321 *et seq.*, Plaintiff is entitled to collect reasonable attorneys' fees. It is hereby ORDERED that counsel confer forthwith and make a good-faith attempt to agree on the amount of an award of reasonable attorneys' fees herein; and that Plaintiff's counsel file on or before November 4, 1991, either a stipulation of the parties as to the amount of attorneys' fees to be awarded or its memorandum of law in support of an award of reasonable attorneys' fees supported by materials of evidentiary quality reflecting the elements of a "lodestar" determination of fees. If agreement is not reached on attorneys' fees, Defendants shall respond to Plaintiff's filing on or before November 14, 1991 and the Court will resolve the issues so generated on the written submissions of the parties.

In sum, no genuine issue of material fact exists for any of the allegations regarding liability under Counts I and II of Plaintiff's Complaint. The issue of exact indebtedness under the terms of the Note and Mortgage as delineated above will be set for resolution by appropriate proceedings.

Accordingly, it is hereby ORDERED that Plaintiff New Maine National Bank's Motion for Summary Judgment be, and it is

hereby, GRANTED, with judgment to enter, following appropriate proceedings.

SO ORDERED.